UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KATHRYN D. GRAY,**

    **Plaintiff,**

  v.

**WINTON WOODS CITY SCHOOLS,** *et al.*,

    **Defendants.**

Case No. 1:23-cv-553

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiff Kathryn D. Gray sued Defendant Winton Woods Board of Education (WWBE),[1] and several school officials (Superintendent, Anthony Smith; Executive Director of Business Affairs, Steven Denny; Executive Director of Human Resources & Legal Services, Courtney Wilson, Esq.; and Transportation Supervisor, Barbara Barnaclo) in their individual and official capacities (collectively, School Officials). (Compl., Doc. 1). Gray, who has no children in the school district, claims Defendants violated her free speech and due process rights and defamed her when they sent her a letter denying her access to the school's transportation office and connected property after she purportedly accosted staff members there in early September 2022.

Defendants have moved to dismiss most of the claims raised against them, arguing that each challenged claim either fails to state a claim for relief or is asserted against a defendant who is immune. (Doc. 8). For the reasons discussed below, the

---

[1] Though Gray designated this entity as Winton Woods City Schools, Defendants' motion states that its proper name is Winton Woods Board of Education. (Doc. 8, #45).

Court **GRANTS IN PART AND DENIES IN PART** Defendants' Partial Motion to Dismiss (Doc. 8).

## BACKGROUND[2]

Per the allegations, Gray, who has no children enrolled in a Winton Woods school, drove with her friend, Brittany Lowry, to the Winton Woods Transportation Office to discuss the school district's allegedly deficient school busing system. (Doc. 1 ¶¶ 10–15, #5–6). There, Gray and Lowry encountered Barnaclo and other city workers. (*Id.* ¶¶ 13–14, #6). The interaction between Gray, Lowry, and Barnaclo apparently devolved into yelling and Barnaclo's threatening to call the police—though Gray alleges she remained calm the entire time she was at the transportation office. (*Id.* ¶¶ 16–18, #6; *but see* Doc. 8-1). Police arrived after Gray had left and took Barnaclo's statement. (Doc. 1 ¶ 19, #6). The resulting police report claimed *Gray* had become angry, shouted profanities, physically tried to pull a glass window open, and fled the scene. (*Id.* ¶¶ 20–21, #6). Gray alleges these descriptions of the interaction were false and that she communicated this belief to Smith and Denny when they met with her and Lowry to discuss the police report. (*Id.* ¶¶ 21–27, #6–7). At the meeting, Lowry allegedly claimed responsibility for having shouted profanities at Barnaclo, after Barnaclo "slammed the window closed while they were talking." (*Id.* ¶ 26, #7).

Nonetheless, following those discussions, Gray received a "Stay Away" letter. (*Id.* ¶ 29, #7). The letter announced that Gray was barred from returning to the

---

[2] Because this matter comes before the Court on Defendants' motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

Winton Woods transportation office—the only location covered by the stay away request—based on the allegedly dangerous and disruptive behavior she engaged in on September 2, 2022.[3] (*Id.* ¶¶ 29–33, #7–8; Doc. 8-1). Namely, the letter charged Gray with having accosted Barnaclo, shouted profanity, and physically prevented a school official from closing a sliding glass window at the location.[4] (Doc. 1 ¶¶ 29–33, #7–8; Doc. 8-1). The letter further claims that Gray had engaged in similar behavior in the past, including making threatening comments about the school superintendent, and that she was a "known and self[-]proclaimed gun enthusiast." (Doc. 8-1, #58). The letter proceeds to suggest Gray herself was a "former employee of Winton Woods City Schools and [the] wife of the former Winton Woods City Schools Transportation Supervisor." (*Id.*). The letter also notified Gray that were she to violate the order not to return to the transportation office, she would be liable for trespassing and police would be forced to intervene. (Doc. 1 ¶ 32, #8; Doc. 8-1). Lowry did not receive such a letter. (Doc. 1 ¶ 33, #8).

---

[3] The letter's listing the incident date as September 2, 2022, appears to be a clerical error as the date of the alleged incident was September 1, 2022. (Doc. 1, #3).

[4] Defendants' Partial Motion to Dismiss supplies the alleged Stay Away letter, which was not attached to the Complaint. (Doc. 8-1). Although the Court must generally confine itself to the pleadings on a motion to dismiss, it may consider this letter in connection with its resolution of this motion because Gray acknowledges the validity of the letter, (Doc. 9-1, #79), and the letter is the alleged actionable defamation on which Gray bases her defamation claim. *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *1 n.3 (S.D. Ohio Jan. 4, 2024). But the Court cannot and will not consider the excerpted email chain purporting to be from Denny regarding the Stay Away letter or the unverified police report attached to Gray's response brief. (Doc. 9-1, #73–78). Defendants have not acknowledged the veracity of these documents; the email chain is not referenced in the Complaint and thus not properly incorporated by reference; Gray has not laid a valid foundation for either document, such as by an affidavit; and neither has self-verifying qualities, such as signatures. *See Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *7 n.9 (S.D. Ohio Feb. 7, 2024).

Gray alleges that Wilson and Denny shared this purportedly defamatory document with other individuals working for WWBE, "at least eight other persons" (who, save "a Forest Park, P.D. school resource officer," are not named or otherwise identified by relevant characteristics), the Springfield Township Police Department, and the Greenhills Police Department. (*Id.* ¶¶ 34–37, #8).

Believing Defendants defamed her and otherwise violated her rights, Gray sued on September 1, 2023. (Doc. 1). In the Complaint, Gray raises six categories of claims: (1) two defamation claims under 28 U.S.C. § 4101 and Ohio common law,[5] (Doc. 1 ¶¶ 38–45, #8–9); (2) a claim for alleged violations of her First Amendment rights caused by the Stay Away letter (citing both her free speech rights and right to petition for redress), (*id.* ¶¶ 46–52, #9–10); (3) a claim for alleged violations of her Fourteenth Amendment due process rights caused by Defendants' barring her from the transportation office, (*id.* ¶¶ 53–56, #10); (4) claims for intentional infliction of emotion distress (IIED) and negligent infliction of emotion distress (NIED), (*id.* ¶¶ 57–64, #10–11); (5) a claim demanding punitive damages from Defendants, (*id.* ¶¶ 65–71); and (6) a "42 U.S.C. § 1983" claim alleging that WWBE had a custom and policy of negligently hiring employees and not supervising the School Officials, which thereby enabled them to "exhibit[] deliberate indifference to [Gray's] constitutional

---

[5] Though Gray lumps her 28 U.S.C. § 4101 and common law defamation claims together in the same count of the Complaint, the Court construes the count as raising two distinct claims for relief. *See Andreae v. Cap. One*, No. 1:22-cv-618, 2024 WL 1579914, at *2 n.4 (S.D. Ohio Apr. 11, 2024) (construing one count in a Complaint as raising more than one legal claim because there is a split in legal authority on whether "a court may partially dismiss a claim based on its rejection of only some of the theories of liability raised").

4

rights,"[6] (*id.* ¶¶ 72–76, #12–13). Gray seeks injunctive and declaratory relief, compensatory and punitive damages, and fees and costs for these claims. (*Id.* at #13).

Defendants moved to dismiss most of the claims. Specifically, Defendants seek dismissal of (1) the purported defamation claim under 28 U.S.C. § 4101 in toto, (2) the common law defamation claim against WWBE, which is purportedly immune from such a claim, (3) the due process claim against all Defendants, (4) the IIED claim against WWBE, (5) the NIED claim against all Defendants, and (6) the punitive damages claims against all Defendants. (Doc. 8, #45, 55). Gray responded opposing dismissal on all counts, save for the § 4101 claim, which she all but conceded fails to state a claim for relief. (Doc. 9, #59, 65). Defendants then replied. (Doc. 10).

The matter is ripe for the Court's review.

**LEGAL STANDARDS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett*

---

[6] The constitutional claims under the First and Fourteenth Amendments are actually § 1983 claims, as § 1983 "creates the private cause of action against a person who violates federal rights when acting under the color of state law." *Washington*, 2024 WL 474403, at *2 n.3.

5

*v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But while well-pleaded allegations are accepted as true, they are just that—allegations.

A court analyzing a motion to dismiss generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). But if "a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). These "written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "[T]hey often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (cleaned up). "Even so, a court will not credit a document attached to a motion to dismiss [or other briefing] that is not integral to or referenced in the complaint, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and undated (i.e., lacks self-verifying qualities)." *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2 (S.D. Ohio Feb. 7, 2024) (cleaned up).

## ANALYSIS

The Court addresses each claim in the order the Complaint presents them. But it pauses to note that Gray sues each of the School Officials in both their individual and official capacities—meaning that for every claim raised naming an individual party as a defendant, two claims are alleged: an official-capacity claim and an

6

individual-capacity claim. An official-capacity claim, though nominally against an official, constitutes a claim against his employer. *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *5 (S.D. Ohio Dec. 21, 2023). So here, the official-capacity claims against the School Officials constitute claims against WWBE. This means that certain claims nominally proceeding against the individual defendants are duplicative of those brought against WWBE (and therefore subject to the same arguments for dismissal). But Defendants have moved to dismiss certain claims only against WWBE without simultaneously moving to dismiss the same claims against the School Official in their official capacities. This strikes the Court as an odd choice. But the Court is bound by the party-presentation principle. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). So it will resolve this motion as Defendants have teed it up: addressing (1) the claims under 28 U.S.C. § 4101, under the Fourteenth Amendment, for NIED, and for punitive damages against all Defendants; and (2) the common law defamation and IIED claims against only WWBE (but not against the School Officials in their official capacities). *See Rice v. Runyon*, 90 F. App'x 819, 821 n.1 (6th Cir. 2004) (employing the *expressio unius* canon—that the specific mention of one thing implies the speaker intended to exclude mention of anything else—to understand a party's briefing). With that preliminary matter out of the way, the Court turns to the merits of Defendants' motion.

A. **28 U.S.C. § 4101 Claim**

Gray first seeks to raise a claim against all Defendants under 28 U.S.C. § 4101. This section merely defines terms used in Chapter 181 of Title 28 of the United States

7

Code, which governs federal courts' recognition of foreign judgments. As Gray has not come anywhere close to alleging that she is attempting to enforce a foreign judgment (or how this definition section creates a private right of action), she fails to state a claim for relief under this provision. *Maurer v. Lincoln Mem'l Univ.*, No. 3:20-cv-395, 2021 WL 136016, at *4 (E.D. Tenn. Jan. 13, 2021). Unsurprisingly, Gray does not really dispute this. (Doc. 9, #65). So the Court will dismiss this claim against all Defendants with prejudice, as there is no way this deficiency could be cured by amendment. *See Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011).

### B.     Common Law Defamation Claim

Next up is Gray's common law defamation claim against WWBE.[7] WWBE's challenge to whether she states a claim for relief for common law defamation rests on its argument that it is immune from such a claim. Under Ohio law, WWBE, as an Ohio school district, constitutes a political subdivision of the state of Ohio. *Price v. Austintown Loc. Sch. Dist. Bd. of Ed.*, 897 N.E.2d 700, 703 (Ohio Ct. App. 2008). And political subdivisions enjoy immunity from suit under the three-tiered structure set out in Ohio Revised Code § 2744.02. To assess whether WWBE is immune here, the Court asks whether "the general grant of immunity provided by [§] 2744.02(A) applies"; if so, "whether immunity has been abrogated by the exceptions set forth in [§] 2744.02(B)"; and if so, "whether the political subdivision is able to [] assert one of

---

[7] The Court agrees that under the applicable Ohio conflict-of-law rules, the defamation claim must arise under Ohio law as all parties and all actions implicated here are tied to Ohio—thus, Ohio has the most significant relationship to the defamation claim. *Dawson v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:22-cv-776, 2024 WL 22735, at *3 (S.D. Ohio Jan. 2, 2024).

8

the defenses listed in [§] 2744.03." *Rosenbrook v. Lucas Cnty. Bd. of Comm'rs*, 33 N.E.3d 562, 567 (Ohio Ct. App. 2015).

Does the general grant of immunity apply? Yes, it does. Ohio Rev. Code § 2744.01(C)(2)(c) ("A 'governmental function' includes … [t]he provision of a system of public education."). The actions Gray attributes to WWBE were made in connection with WWBE's running its school busing system. (*See* Doc. 1 ¶¶ 12, 15, #3, 6). And the allegedly defamatory letter was directly connected to WWBE's management of its transportation office, as it resulted from WWBE's control over who had access to the office where it directs busing operations. (Doc. 8-1). Ohio courts have held that the provision of public education and any attendant "activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process, are fundamental to the provision of a system of public education and, hence, constitute governmental functions." *Student Doe v. Adkins*, 178 N.E.3d 947, 955–56 (Ohio Ct. App. 2021) (cleaned up) (collecting cases). Busing is such an "administrative function[] of the educational process," as the transportation of children to and from school is a necessary predicate to educational instruction. *Id.* at 956. And given even education-related "personnel decisions" fall within this broad umbrella of activities attendant to education that constitute governmental functions, it follows that the management of the school's transportation office is also properly considered a governmental function. *Id.* (citation omitted). So § 2744.02(A)(1) immunity applies.

9

If the grant of immunity applies, has it been abrogated by any of the exceptions listed in Ohio Revised Code § 2744.02(B)? No. The only exceptions to the general grant of immunity for political subdivisions performing governmental functions are for harms occasioned by a negligently operated motor vehicle, negligent roadway maintenance, "physical defects" in governmental property, and failure to comply with another statutory provision that explicitly imposes liability on the subdivision. Ohio Rev. Code § 2744.02(B)(1), (3)–(5). As Gray's claim turns on a defamatory letter and she does not contend that another statutory provision imposes liability for its alleged publication, (*see* Doc. 9, #66), these exceptions do not apply. Thus, WWBE is immune from Gray's defamation claim under § 2744.02(A)(1), and it must be dismissed.

Gray contests this conclusion. She claims that WWBE's actions in sending this defamatory letter constituted a "proprietary function[] of the subdivision, as opposed to [a] governmental function[]," and that the exception laid out in § 2744.02(B)(2), which excepts the "negligent performance of [employees'] acts" that further the subdivision's proprietary functions from the general grant of immunity, therefore applies. (Doc. 9, #66). But other than reiterate the definition of a "proprietary function" set forth in § 2744.01(G), Gray provides no explanation why she believes the operations of Winton Woods' busing satisfies that definition. (Doc. 9, #66). It is not the Court's job to craft arguments for litigants. And given Gray needed to *explain* her argument with citations to caselaw and the relevant portions of the record, her perfunctory and undeveloped argument against the application of subdivision

10

immunity to her defamation claim is forfeited.[8] *Brenay v. Schartow*, 709 F. App'x 331, 336–37 (6th Cir. 2017).

So because the Court finds that allegedly defamatory conduct here arose from WWBE's performance of a governmental function, WWBE enjoys immunity from Gray's common law defamation claim under § 2744.02(A)(1). And as Gray has failed to identify an applicable exception to that immunity, the Court will dismiss Gray's defamation claim without prejudice.

**C. Due Process Claim**

The Court next turns to Gray's due process claim against all Defendants.[9] To make out a § 1983 claim for the deprivation of due process rights, a party must allege

---

[8] Even were the Court inclined to review Gray's argument that the operations of school busing constitutes a proprietary function, it would fail. As defined in the immunity statute, a proprietary function is one not already specifically identified as a governmental function (i.e., a function "not … specified in division (C)(2)"). Ohio Rev. Code § 2744.01(G)(1)(a). But as noted above, "[t]he provision of a system of public education" is one such governmental function listed in division (C)(2) of § 2744.01. *Id.* § 2744.01(C)(2)(c). And Ohio courts have grouped administrative functions necessarily and inherently tied to public education together as activities covered by the governmental function of providing "a system of public education." So the Court would still hold that school busing constitutes a governmental function. Simply, it is an administrative function that is intertwined with the provision of public education to the public. So WWBE and its agents were engaged in a governmental function when they (rightly or wrongly) excluded Gray from the Winton Woods transportation office, which means WWBE is immune from her common law defamation claim.

[9] The Court agrees with Defendants that it is unclear from the Complaint whether Gray pursues a substantive or procedural due process claim in Count III. (Doc. 8, #53). But the Court finds that it does not matter because the interests protected by the substantive component of the Fourteenth Amendment Due Process Clause are narrower than those interests protected by its procedural component. *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003). And to the extent that, as the Court finds here, there is no protectable property or liberty interest for members of the public to access a transportation office for a school bus system, it cannot be said that such access is an interest so "rooted in the traditions and conscience of our peoples as to be [deemed] fundamental." *Id.* at 250. Thus, the Court's determination that Gray's procedural due process claim (to the extent one is alleged) fails as matter of law necessarily means any substantive due process claim fails for the same reason.

that he "had a life, liberty, or property interest protected by the Due Process Clause," was deprived of that interest, and was not afforded adequate procedural rights for the denial. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). Gray's claim falters at step one: the need to establish a protectable liberty or property interest. "Every court that has considered the issue has concluded that citizens, including parents do not have a liberty or property interest in accessing school property." *Johnson v. Knox Cnty.*, No. 3:19-cv-179, 2022 WL 894601, at *5 (E.D. Tenn. Mar. 25, 2022) (cleaned up); *see generally Guy v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, No. 18-cv-893, 2020 WL 2838508, at *4 (S.D. Ohio May 31, 2020) (collecting cases holding the same). This caselaw directly applies, and with even greater force here, given Gray is not a parent of a child in the Winton Woods school system and therefore has no special connection to the school district. Without allegations to support a necessary element of a due process claim, Gray's due process claim must fail as against all Defendants.

Gray disputes this outcome. But she does not address what protectable liberty or property interest she believes she was purportedly denied when she was banned from the Winton Woods transportation office. (Doc. 9, #68–69 (raising arguments about the denial of her free speech rights)). So she provides no explanation why this claim should survive dismissal. As a result, considering the overwhelming caselaw finding that members of the public do not state valid due process claims when they allege they were denied access to school property, *Guy*, 2020 WL 2838508, at *4, the Court will dismiss this claim against all Defendants without prejudice.

### D.     Emotional Distress Claims

Next up are the emotional distress claims. As noted, all Defendants move to dismiss the NIED claim. But only WWBE moves to dismiss the IIED claim against it. The Court takes each in turn.

For NIED, to state a valid claim for relief under Ohio law, *see supra* note 7, Gray needs to allege that (1) she "witnessed and/or experienced a real or impending danger to another," (2) "the defendant's conduct negligently caused the dangerous incident," and (3) the "conduct was the proximate cause of plaintiff's serious and reasonably foreseeable emotional distress." *David v. Matter*, 96 N.E.3d 1012, 1017 (Ohio Ct. App. 2017). Gray's NIED claim fails at the first step as her Complaint lacks factual allegations suggesting that she observed or experienced any physical danger to herself or another. *Walkosky v. Valley Mem'ls*, 765 N.E.2d 429, 432 (Ohio Ct. App. 2001) (explaining that for an NIED claim to be viable plaintiff must be placed in fear by "an actual physical peril"). That dooms the claim completely.

Gray again contests dismissal but fails to address what physical peril she experienced. Instead, she simply characterizes Defendants' actions as outrageous and emphasizes that she has suffered severe distress. (Doc. 9, #69–70). But fear alone does not an NIED claim make. *Criswell v. Brentwood Hosp.*, 551 N.E.2d 1315, 1318 (Ohio Ct. App. 1989) ("Ohio case law has recognized negligent infliction of emotional distress only where there is cognizance of a real danger, not mere fear of nonexistent peril."). So Gray has not explained how her NIED claim against all Defendants can survive dismissal. The Court will therefore dismiss it in toto without prejudice.

13

Next is Gray's IIED claim against WWBE. As WWBE argues for dismissal of this claim based solely on subdivision immunity under Ohio Revised Code § 2744.02, (Doc. 8, #55), the Court's analysis generally follows the same three steps that applied to Gray's common law defamation claim.[10] But the Court need not walk through that entire process, as the Supreme Court of Ohio has already answered this question. It has held that "there are no exceptions to [subdivision] immunity for the intentional tort of … intentional infliction of emotional distress." *Hubbard v. Canton City Sch. Bd of Educ.*, 780 N.E.2d 543, 546 (Ohio 2002) (cleaned up). That compels dismissal here. And as Gray does not even address the immunity issue with her IIED claim in her response brief, (Doc. 9, #69–70), she has forfeited any objections to its dismissal. Finally, given the holding in *Hubbard,* no amendment could cure the defect with Gray's IIED claim against WWBE. So dismissal will be with prejudice. *Brown*, 415 F. App'x at 614.

E.   **Punitive Damages Claim**

Last up is Gray's nominally styled punitive damages claim. Defendants raise only two arguments in favor of dismissing this final claim: that (1) punitive damages are derivative of an underlying claim for relief and thus one cannot state a standalone claim for such relief, and (2) Gray cannot recover punitive damages from WWBE because it is a political subdivision. (Doc. 8, #56). They are correct on both fronts.

---

[10] Because the Court finds that Gray failed to state a valid NIED claim in the first instance, it is unnecessary to reach WWBE's immunity argument related to that claim. But it briefly notes that, considering Gray does not address the immunity arguments applicable to her emotional distress claims, (Doc. 9, #69–70), WWBE, as a political subdivision engaged in a governmental function, would enjoy immunity from Gray's NIED claim for the same reasons immunity applied to her defamation claim. *See supra* Section B.

14

As to the former, Ohio law, *see supra* note 7, does not recognize a separate cause of action for punitive damages, which relief is merely a remedy that attaches to other substantive claims. *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994). For that reason, the standalone punitive damages count cannot state a claim for relief and must be dismissed. *Jestice v. Butler Tech. & Career Dev. Schs. Bd. of Ed.*, No. 1:11-cv-101, 2012 WL 71021, at *4 (S.D. Ohio Jan. 10, 2012).[11]

That said, in dismissing this count of the Complaint, the Court should not be understood to be saying that, as a matter of law, punitive damages are not available here as against the School Officials. There are a couple of underlying claims raised in this Complaint (including one, the NIED claim, that the Court is dismissing without prejudice, but which Gray could perhaps replead with more facts) to which punitive damages might attach if Gray were to succeed on them and to make certain factual showings. *Gibson Bros. v. Oberlin Coll.*, 187 N.E.3d 629, 654 (Ohio Ct. App. 2022) (IIED); *Gilbert v. WNIR 100 FM*, 756 N.E.2d 1263, 1277 (Ohio Ct. App. 2001) (defamation); *Dimora v. Ne. Ohio Corr. Ctr.*, No. 4:14-cv-1221, 2015 WL 1119768, at

---

[11] The Court recognizes that there is a line of cases suggesting that district courts can preserve such standalone punitive damages counts in a complaint, so long as there are other claims supporting such requested relief and there are sufficient allegations of malice such that recovery for punitive damages might ultimately be warranted after discovery and trial. *E.g.*, *ArmorSource, LLC v. Kapah*, No. 2:18-cv-905, 2020 WL 1469473, at *4 (S.D. Ohio Mar. 26, 2020); *Baker v. Swift Transp. Co. of Ariz., LLC*, No. 2:17-cv-909, 2018 WL 2088006, at *5–*6 (S.D. Ohio May 4, 2018); *McIntire v. Baxter Int'l Inc.*, No. 2:16-cv-185, 2017 WL 1078599, at *6–*7 (S.D. Ohio Mar. 21, 2017); *Raftery v. S. Lee Corp.*, No. 2:07-cv-649, 2007 WL 4085289, at *2, *4 (S.D. Ohio Nov. 15, 2007); *cf. McNamee-Miller v. HMD Trucking, Inc.*, No. 2:22-cv-3389, 2023 WL 2445608, at *3–*4, *3 n.3 (S.D. Ohio Mar. 10, 2023). But given Ohio law does not recognize a substantive claim for relief for punitive damages, which is just a remedy for other substantive harms, the Court is not persuaded that this caselaw is correct and declines to apply it. *W. & S. Life Ins. Co. Benefits Comm. v. Jenkins*, No. 1:23-cv-609, 2024 WL 2132416, at *3 n.2 (S.D. Ohio May 13, 2024). Thus, the better result is the path taken today—to dismiss the count from the Complaint.

15

\*2 (N.D. Ohio Mar. 11, 2015) (NIED). And Gray still includes a request for punitive damages in her prayer for relief. (Doc. 1, #13). So the Court's dismissal of Count V does not prejudice Gray's ability to prosecute, during discovery and at trial, a request for punitive damages as relief for her remaining live claims against the School Officials. Rather, the point is merely that punitive damages are a potential remedy, not a standalone claim.[12]

As Defendants argue in the alternative, (Doc. 8, #56), though, the situation is a little different with respect to WWBE. As a political subdivision, WWBE cannot be on the receiving end of a punitive damages award for either the state-law claims, Ohio Rev. Code § 2744.05(A), or for the federal § 1983 claims, *Hart v. Paint Valley Loc. Sch. Dist.*, No. 2:01-cv-4, 2002 WL 31951264, at \*16 (S.D. Ohio Nov. 15, 2002). Thus, Gray cannot proceed, either during discovery or at trial, on any effort to secure punitive damages from that entity.

Putting that distinction aside, the underlying point remains the same—punitive damages is not appropriately listed as a separate count, as it is not a "claim" for relief. Because that defect cannot be addressed by repleading, the Court dismisses Count V in toto with prejudice. *Brown*, 415 F. App'x at 614.

---

[12] Of course, the Court leaves for another day whether Gray can prove whether punitive damages are warranted here. *Revel Sys., Inc. v. Frisch's Rests., Inc.*, No. 1:23-cv-507, 2024 WL 1406107, at \*4 & n.5 (S.D. Ohio Apr. 2, 2024) ("Were this case to progress to a point where it becomes necessary to evaluate *which* remedies are proper, Frisch's may dispute whether Revel's request for specific performance is legally sound. But until that time, this form of requested relief remains untouched."); *accord Lion Fed. Credit Union v. Worldpay, LLC*, No. 1:24-cv-163, 2024 WL 1704551, at \*12 & n.9 (S.D. Ohio Apr. 19, 2024).

**CONCLUSION**

As explained above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Partial Motion to Dismiss (Doc. 8). Specifically, as against all Defendants, the Court **DISMISSES WITH PREJUDICE** Gray's 28 U.S.C. § 4101 claim found in Count I and her punitive damages count (as a standalone "claim") listed as Count V of the Complaint. And, as against all Defendants, the Court **DISMISSES WITHOUT PREJUDICE** her due process claim found in Count III and NIED claim found in Count IV. In addition, as against just WWBE, the Court **DISMISSES WITH PREJUDICE** Gray's IIED claim found in Count IV and **DISMISSES WITHOUT PREJUDICE** her common law defamation claim found in Count I of the Complaint.

So after all is said and done with the partial motion to dismiss, the remaining claims against the School Officials (sued in both their individual and official capacities) are the common law defamation claim in Count I, the First Amendment claim in Count II, and the IIED claim in Count IV. And the only remaining claims against WWBE are found in Counts II and VI of the Complaint.

**SO ORDERED.**

June 7, 2024
  **DATE**

                                                **DOUGLAS R. COLE**
                                                **UNITED STATES DISTRICT JUDGE**